WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—June, 1886.

## JOHNSON *v.* JOHNSON.

*In the matter of the application for the revocation of
ancillary letters of guardianship issued to* JAHU
W. JOHNSON, *as general guardian of* MILBANK
JOHNSON *and others, infants.*

The laws of this State, and the rules established by our courts, affecting
the control and management of trust funds, govern, so far as they are
applicable, with respect to property within the control of those tribu-
nals, though the *cestuis que trustent* are residents of another state,
and the custodian of the funds is acting under letters, issued here,
ancillary to an appointment in the foreign jurisdiction.

Code Civ. Pro., § 2839, permitting a Surrogate to issue ancillary letters of
general guardianship of the property of an infant residing in another
state, in case he is satisfied " that it will be for the ward's interest ' so
to do, impliedly authorizes that officer to revoke such letters, where it
appears that the like result will be accomplished by a revocation, and
thus render secure the property of the ward yet remaining within his
jurisdiction, irrespectively of the action of the court by which the
guardian's powers were originally conferred.

JAHU W. JOHNSON was appointed by the proper
court in Houston in the state of Texas, where he and
his minor children resided, general guardian of Emma
O. Johnson, Milbank Johnson, and Carrie B. Johnson,
said minor children, in December, 1880. The child-
ren being entitled to certain property under the will
of Gail Borden, admitted to probate in Westchester
county, their general guardian, in the same month,
applied for and obtained ancillary letters of guardian-
ship from the Surrogate of that county. Application·
was now made by Gail B. Johnson, an adult brother

of the infants, to revoke the latter, on the ground that the guardian had improvidently managed the funds belonging to his wards, amounting to about $90,000, which he had removed to the state of Texas, by making unsafe and improper investments thereof, and by employing a large part of the same in a private business which he was there conducting, and that he was, therefore, no longer a fit person to receive further funds belonging to them.

M. G. HART, *for petitioner.*

L. C. PLATT, *for general guardian.*

THE SURROGATE.—It is objected by the counsel for the guardian that this court has no power to revoke the ancillary letters, unless the principal letters shall first have been revoked. It is true, there is no express provision of the statute authorizing such revocation ; but it will be observed that the Code (§ 2839) authorizes the Surrogate to issue such letters where he is satisfied that it will be for the wards' interest to do so. It would seem, therefore, that where, after having granted such letters, a state of facts is shown which satisfies him that the wards' interests will be jeopardized by permitting any more of his property to be removed from the State under the authority conferred by such letters, it is his duty, without regard to the action of the court from which the principal letters were issued, to revoke them, and thus render secure the property of the ward which yet remains within his jurisdiction.

It appears that, by the will of Gail Borden, their uncle, these minors are each entitled to an annual in-

come of several thousand dollars during their minority. If satisfied that it is in danger of being lost by the removal of it from the State, I think this court has the same power to revoke the ancillary letters that it had, in the first instance, to refuse them on the same ground.

It is alleged that the laws of Texas authorize investments of funds belonging to infants, on personal securities and in other modes which are forbidden as hazardous by our courts. It appears, from the testimony, that some of the investments, so made by the guardian there, have proved unproductive, while others may justly be regarded as endangering the integrity of the fund. The laws of this State, and the rules established by our courts affecting the control and management of such funds, must govern, so far as they may be applied to property yet within control. Of course, such as has already been removed to Texas, by virtue of the power given by the ancillary letters, is beyond reach, and must be managed under the laws of that state.

Decree revoking letters granted.